**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

| | |
|---|---|
| SHAMPOIRE ORANGE, | |
| Plaintiff, | CIVIL ACTION NO.: 6:19-cv-5 |
| v. | |
| SHAUN BARRICK, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Shaun Barrick, Mark Foreman, Natalie Harris, Charles Thomas, and Kenny Thompson's Motion for Summary Judgment.[1]  Doc. 49. Plaintiff filed a Response, opposing Defendants' Motion for Summary Judgment.  Docs. 56, 58. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## PROCEDURAL HISTORY

Plaintiff, who is currently incarcerated at the United States Penitentiary-Coleman in Coleman, Florida, filed this action asserting claims under 42 U.S.C. § 1983 based on events occurring while he was at Bulloch County Jail in Statesboro, Georgia.  Doc. 38.  After conducting frivolity review, the Court dismissed Plaintiff's equal protection claim and First

---

[1]  Plaintiff initially named a Defendant Eric Thomas.  However, Plaintiff moved to amend, which the Court granted, to substitute purported Defendant Eric Thomas with Defendant Charles Thomas.  Docs 36, 37.  The Court directed the Clerk of Court to substitute Defendant Charles Thomas for Defendant Eric Thomas.  Doc. 37 at 2.  Thus, no claims remain pending against Eric Thomas and he should be terminated as a Defendant.  Aside from this footnote, references in this Report to Defendant "Thomas" are to Defendant Charles Thomas.

Amendment retaliation claim.  Docs. 23, 27.  However, the Court permitted Plaintiff to proceed

with his Eighth Amendment claims against Defendants Barrick, Foreman, Harris, Thompson,

and Eric Thomas.  Docs. 23, 27.

Following service of Plaintiff's Second Amended Complaint, he filed a motion for leave

to file a Third Amended Complaint.  Doc. 36.  Plaintiff sought to amend his Second Amended

Complaint to change to the name of Defendant Eric Thomas to Charles Thomas.  Id.  The Court

granted Plaintiff's motion for this limited purpose.  Id.  Plaintiff complied and filed a Third

Amended Complaint, which became the operative Complaint in this action.  Doc. 38.  Other than

changing Defendant Thomas' first name, the allegations in his Third Amended Complaint and

Second Amended Complaint are the same.

Plaintiff's claims concern events on December 10, 2018, while Plaintiff was housed at

the Bulloch County Jail.  Doc. 38-1 at 2.  On that day, Plaintiff explains he rejected Defendants

Foreman and Harris' attempts to move him from segregation into general population, informing

them he did not want to leave his segregation cell due to a knee injury and fears for his safety in

general population.  Id.  The officers returned to Plaintiff's cell with Defendants Thomas and

Barrick and an order from Defendant Thompson to move Plaintiff to general population.  Id. at 3;

Doc. 38-2 at 3.  Plaintiff alleges when he reiterated his fears about placement in general

population, Defendants Thomas and Foreman grabbed Plaintiff to move him, while Plaintiff held

onto his bunk.  Doc. 38-2 at 3.  Defendant Barrick then shot Plaintiff in the arm and leg with a

taser.  Id. at 2–3.  After being shot with a taser, Plaintiff alleges Defendant Foreman threw him to

the ground, placed his knee on Plaintiff's back, and cuffed him with the help of Defendant

Thomas.  Id.  During the incident, Defendant Harris stood in the doorway of the cell.  Id. at 2.

Plaintiff alleges excessive force was used by Defendant Barrick when he discharged his taser.  Doc. 38.  Plaintiff also alleges Defendants Foreman and Thomas used excessive force while securing Plaintiff in restraints.  Id.

## UNDISPUTED MATERIAL FACTS[2]

At the time relevant to Plaintiff's Eighth Amendment claim, he was incarcerated at the Bulloch County Jail in Statesboro, Georgia.  Doc. 49-1 at 1; Doc. 49-8; Doc. 58-17 at 1.  Plaintiff was housed in segregation.  Doc. 58-17 at 2; Doc. 58-10 at 2.  On December 10, 2018, Plaintiff was told to gather his belonging and leave his cell.  Doc. 49-1 at 1; Doc. 49-3 at 22; Doc. 58-17 at 2.  However, Plaintiff refused to follow orders.  Doc. 49-1 at 2; Doc. 49-3 at 24–25.  After Plaintiff refused orders, Defendants Harris and Thompson ordered Defendants Barrick, Foreman, and Thomas to move Plaintiff.  Doc. 58-17 at 2–3; Doc. 58-10 at 2–3.  After Plaintiff again refused to follow orders, Defendants Foreman, Harris, Thomas, and Barrick entered Plaintiff's cell.  Doc. 49-1 at 2; Doc. 49-3 at 24; Doc. 58-17 at 2; Doc. 58-10 at 2–3.  As Plaintiff was sitting on his bed, Defendants Foreman and Thomas attempted to move Plaintiff by grabbing his arms.  Doc. 49-1 at 2; Doc. 49-3 at 24; Doc. 58-17 at 4; Doc. 58-10 at 3.  When Defendants Foreman and Thomas tried to move Plaintiff, Plaintiff grabbed and held tightly onto the bed in

---

[2]    Plaintiff submitted a "Statement of Undisputed Material Facts/Facts in Support of Plaintiff Motion Opposing Summary Judgment."  Doc. 58-17.  However, Plaintiff does not actually dispute most facts listed in this section.  Further, many of Plaintiff's "facts" are unsupported by the record and are disregarded for the purposed of summary judgment.  See Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (stating plaintiff's "conclusory assertions . . ., in the absence of supporting evidence, are insufficient to withstand summary judgment"), abrogated on other grounds by Lewis v. City of Union City, 918 F.3d 1213 (11th Cir. 2019); see also Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections).

The undersigned has determined which facts are undisputed, material, and supported by the record considering the parties' briefing.  The facts recited here represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party.  See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

his cell so Defendants could not move him and still refused to leave his cell.  Doc. 49-1 at 2;
Doc. 49-3 at 24.

Defendant Foreman told Plaintiff if he continued to resist and refuse to follow orders,
further action would be taken.  Doc. 49-1 at 2; Doc. 49-8 at 1–2.  Defendant Foreman warned
Plaintiff if he continued to disobey orders to leave his cell, he would be tasered.  Doc. 49-1 at 2;
Doc. 49-8 at 2.  Plaintiff still refused to comply with orders and did not release his grip on the
bed.  Doc. 49-1 at 2; Doc. 49-3 at 24–25; Doc. 49-8 at 1–2.  At this point, Defendant Barrick
entered Plaintiff's cell and discharged his taser a single time, striking Plaintiff in his leg and arm.
Doc. 49-1 at 2; Doc. 49-8 at 25; Doc. 58-17 at 4; Doc. 58-10 at 2–3.  Plaintiff was then forced to
the floor by Defendants Foreman and Thomas, and they restrained him with handcuffs.  Doc. 49-
1 at 2; Doc. 49-3 at 25; Doc. 49-8 at 1–2; Doc. 58-17 at 4.  Plaintiff continued to resist as
Defendants Foreman and Thomas were handcuffing him.  Doc. 49-2 at 2; Doc. 49-8 at 2.

Defendant Harris was present throughout the incident.  Doc. 49-1 at 3–4.  Defendant
Thompson was not present during the incident, including when Defendant Barrick discharged his
taser or when Defendants Foreman and Thomas secured Plaintiff in restraints.  Doc. 49-1 at 4;
Doc. 49-8 at 25.

After handcuffing Plaintiff, he was taken to booking and placed in leg shackles.  Doc. 49-
1 at 2; Doc. 49-8 at 2; Doc. 58-17 at 4.  Plaintiff continued to resist while being escorted to
booking.  Doc. 49-1 at 2; Doc. 49-8 at 2.  Plaintiff was next brought to medical, but he refused to
be examined.  Doc. 49-1 at 2; Doc. 49-8 at 2.  As a result of being tasered, Plaintiff had a small
open area on his right forearm, but there was no redness, no sign of infection or drainage, and
only slight swelling around the wound.  Doc. 49-1 at 3; Doc. 49-9 at 1.  The next day, on

December 11, 2018, Plaintiff was provided an antibiotic as a precautionary measure.  Doc. 49-1 at 3; Doc. 49-9 at 1.

Plaintiff was also seen by a psychologist for his alleged emotional stress related to being tasered.  Doc. 49-1 at 2; Doc. 49-9 at 2.  Plaintiff's visit was terminated by the psychologist because Plaintiff sought personal information from her, and when she declined to provide personal information, Plaintiff became argumentative and insistent on getting her personal information.  Doc. 49-1 at 2; Doc. 49-9 at 2.  Plaintiff declined further health treatment.  Doc. 49-1 at 2; Doc. 49-9 at 2.

## DISCUSSION

### I.    Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must

identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. Defendants Are Entitled to Summary Judgment on Plaintiff's Claim

Defendants argue they are entitled to summary judgment on Plaintiff's claims because the undisputed material facts show Defendants did not violate Plaintiff's Eighth Amendment rights. Doc. 49-2.

### A. Excessive Force Legal Standard

At the outset, it is important to address Plaintiff's custodial status during the relevant period. On May 26, 2017, a warrant was issued for Plaintiff's arrest because he violated the conditions of his parole on a then-existing sentence. Doc. 49-2 at 2 n.2 (citing Doc. 49-4). Plaintiff was taken into custody on this warrant and was held at the Bulloch County Jail. At some point between when he began his term of incarceration for the parole violation and December 10, 2018 (when the events forming the basis for this suit occurred), Plaintiff was

charged in the state and federal systems for committing new offenses.  As a result, on December 10, 2018, Plaintiff was serving time for the parole violation and was awaiting trial on additional federal and state charges  Id.

Different standards apply for excessive force claims against pretrial detainees and incarcerated prisoners.  See Patel v Lanier County, 969 F. 3d 1178, 1181 (11th Cir 2020) (addressing the different standards under the Eighth and Fourteenth Amendment for excessive force claims).  Where an inmate is imprisoned because of a parole violation from an existing sentence, his claim is addressed under the standard that applies to convicted prisoners.  Bell v. Lamb, 6:17-cv-12, 2020 WL 1817320, at *5 n.6 (S.D. Ga. Mar. 6, 2020) *report and recommendation adopted*, 2020 WL 1811650 (S.D. Ga. Apr. 8, 2020).  Plaintiff was serving a term of imprisonment for violating his parole at the time these events occurred, therefore, the Eighth Amendment governs Plaintiff's claims.

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force prison officials are entitled to use against inmates.  Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  An excessive force claim has two requisite parts: an objective and a subjective component.  Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994).  To satisfy the objective component, the inmate must show the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Subjectively, such "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'"  Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) (quoting Skritch v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002)); Pearson v. Taylor, 665 F. App'x 858, 863 (11th Cir. 2016) ("The 'core judicial inquiry' for an excessive-force claim is 'whether

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'") (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)).  "Correctional officers in a prison setting can use pepper spray on an inmate, but there must be a valid penological reason for such a use of force."  Williams v. Rickman, 759 F. App'x 849, 851 (11th Cir. 2019).

The Eleventh Circuit Court of Appeals has "identified five factors to help evaluate whether force was applied maliciously or sadistically."  Pearson, 665 F. App'x at 863; Burke, 653 F. App'x at 695.  The factors are: (1) the need for the exercise of force; (2) the relationship between the need for force and the force applied; (3) the extent of injury the inmate suffered; (4) the extent of the threat to the safety of staff and other inmates; and (5) any efforts taken temper the severity of a forceful response.  Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Any action taken should be viewed considering the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security.  Hudson v. McMillian, 503 U.S. 1, 6 (1992).  For example, use of an appropriate degree of force to compel compliance with a valid order is justified.  Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

**B.      Defendants Barrick, Thomas, and Foreman Are Entitled to Summary Judgment**

Defendants argue Defendant Barrick's use of force, when he discharged his taser once in response to Plaintiff's refusal to comply with orders to leave his cell, does not constitute excessive force or violate the Eighth Amendment.  Further, they contend Defendants Foreman and Thomas' use of force in taking Plaintiff to the ground and handcuffing him afterwards did not violate Plaintiff's Eighth Amendment rights.  Plaintiff maintains Defendants violated his rights.  Doc. 58 at 1–2.  According to Plaintiff, the force was excessive because it was in response to his request to be placed in protective custody and his refusal to follow orders does not permit Defendants to use any force to ensure compliance with their orders.  Id. at 4–7.[3]

### 1.      The need for the application force.

Plaintiff argues no force was needed because a failure to follow an order is only a minor infraction under Bulloch County Jail's Policy for Inmates and rather than deploying his taser to ensure compliance, Defendant Barrick could have written up Plaintiff.  Id. at 9.  Defendants, on the other hand, argue Plaintiff's noncompliance with prison officials orders to move from is cell permitted Defendants' use of force, i.e., Defendant Barrick's tasering of Plaintiff and Defendants Foreman and Thomas forcing Plaintiff to the ground and handcuffing him.  Doc. 49-2 at 10.

Here, the undisputed material facts show Plaintiff refused to comply with multiple orders to leave his cell and grabbed onto his bed to prevent prison officials from moving him, prior to Defendant Barrick tasering him.  Plaintiff does not dispute he was refusing to comply with orders.  Plaintiff argues his refusal to follow orders was justified because it was based on his

---

[3]      As explained above, Plaintiff's claim is analyzed under the Eighth Amendment, which requires Plaintiff to prove both objective and subjective components.  The undersigned begins the analysis with the subjective prong of Plaintiff's Eighth Amendment claim.  For the reasons explained below, Plaintiff's claim fails to satisfy this prong.  Therefore, the Court declines to analyze whether Defendants use of force was objectively excessive.

wish to remain in solitary confinement.  But Plaintiff's justification for refusing to comply the guard's instructions does not sway the analysis in this case.  Indeed, "prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out." Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled in part on other grounds, as recognized by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).  Similarly, the fact Plaintiff's refusal to return to general population only constituted a minor infraction under jail policy is immaterial.

It is well-settled that where an inmate refuses orders, prison officials use of force is not inappropriate.  The Eleventh Circuit Court of Appeals has held where an inmate refuses to return to his cell, a prison official is justified in his use of some force.  Brown, 813 F.2d at 1189–90; see also Alday v. Groover, No. CV 212-108, 2014 WL 1320093, at *6 (S.D. Ga. Mar. 31, 2014) (noting plaintiff failed to follow officer's lawful commands and an "official need not wait until disturbances are dangerous before using force to restore order.") (citing Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)); Miles v. Jackson, 757 F. App'x 828, 830 (11th Cir. 2018) (finding a need for force where the inmate failed to comply with an officer's orders to go further into a cell and evaded attempts at compliance).  There is no meaningful distinction between an inmate's refusal to return to his cell and Plaintiff's refusal to comply with his cell reassignment. In both instances, there is a refusal to comply with prison officials' orders related to housing, presumably given to maintain order and safety within the prison.  Accordingly, there was some legitimate need for force based on Plaintiff's noncompliance with Defendants' orders and this factor weighs in Defendant Barrick's favor.

Plaintiff's refusal to follow orders also justified Defendants Foreman and Thomas forcing Plaintiff to the ground and handcuffing him.  Again, the undisputed facts are that Plaintiff

continued to resist while Defendants Foreman and Thomas tried to handcuff him, even after being tasered.  Prison officials are permitted to use force to maintain and restore prison discipline and security, such as by forcing Plaintiff to be handcuffed.  Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (holding a prison guard may use force to maintain order).  Thus, Plaintiff's refusal to follow orders and continued resistance justified Defendants Foreman and Thomas' use of force.  Helton v. Burks, No. 1:11-CV-77, 2013 WL 6081764, at *4 (M.D. Ga. Nov. 19, 2013) (citing Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984)).

## 2.   *Relationship between the need for force and the force applied.*

The relationship between the need for force and the force applied also cuts in favor of Defendants Barrick, Foreman, and Thomas.  As explained above, Plaintiff's refusal to follow orders necessitated at least some use of force.  Here, the use of force by Defendant Barrick was a single taser shot.  A single use of a taser shot was a proportional response to Plaintiff's noncompliance.  See Moore v. Gwinnett County, 805 F. App'x 802, 809 (11th Cir. 2020) (holding a single use of a taser shock was not disproportionate to the need for force where a suspect refused a police officer's instruction); Wilborn v. Graham, No. 1:15-CV-4153, 2017 WL 9477636, at *9–10 (N.D. Ga. May 19, 2017) (holding prison officer's actions reasonable when the officer handcuffed a noncompliant inmate in the shower after deploying his taser once).

Similarly, Defendants Foreman and Thomas' takedown of Plaintiff and application of handcuffs was reasonable amount of force to use given Plaintiff's noncompliance.  Miles, 757 F. App'x at 830 (holding the use of a takedown is not disproportionate to the need to control an inmate who failed to obey orders); Scott v. Brown, No. 1:11-CV-1811, 2013 WL 4482498, at *6–7 (N.D. Ga. Aug. 16, 2013) (holding the officer's conduct reasonable where the officer tasered the noncompliant inmate one time and then handcuffed him).

Consequently, this factor also cuts in favor of summary judgment for Defendants on Plaintiff's excessive force claim.

### 3.   *The extent of Plaintiff's injuries.*

The extent of Plaintiff's injuries weighs in Defendants' favor.  The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins, 559 U.S. at 37).  While the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendant, not the severity of the injury that resulted to Plaintiff.  Id. at 800–01 (citing Wilkins, 559 U.S. at 37).  Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  Wilkins, 559 U.S. at 38.

Plaintiff alleges as a result of Defendants' use of force, he had a wound from the taser that swelled and became infected, was kneed in the back, and he suffered emotional distress. Doc. 58 at 7–8.  Plaintiff has provided no evidence to support the injuries he claims.  Instead, the undisputed material facts are that Plaintiff had a small wound on his right forearm as a result of being tasered.  There was no redness, no sign of infection, and only slight swelling around the area and medical staff only provided Plaintiff an antibiotic for his injury as a precaution.  Doc. 49-9 at 1; see Wilson v. Walker, No. 6:14-cv-28, 2015 WL 5884874, *5 (S.D. Ga. Oct. 7, 2015) (holding the extent of plaintiff's injuries cuts in defendant's favor where objective evidence contradicts plaintiff's assertion he suffered more severe injuries).

There is also no evidence supporting Plaintiff's claims of emotional distress.  While Plaintiff was seen by a psychologist following the incident, that visit was terminated because

Plaintiff sought personal information from the psychologist.  Doc. 49-9 at 2.  Further, Plaintiff

declined further mental health treatment.  Id.  Plaintiff's self-serving claims of physical and

emotional injuries are not enough.  Plaintiff was required to point to some of evidence of his

claimed injuries.  Riggins v. Beseler, 568 F. App'x 850, 853 (11th Cir. 2014).  Here, the injuries

are so minor they weigh against the jury finding for Plaintiff on the "core judicial inquiry" of

whether "the nature of the force—specifically, whether it was nontrivial and 'was applied . . .

maliciously and sadistically to cause harm.'"  Wilkins, 559 U.S. at 39 (ellipsis in original)

(quoting Hudson, 503 U.S. at 7).  Accordingly, this factor cuts in Defendants' favor.

### 4.   The extent of the threat to the safety of staff and other inmates.

Plaintiff was refusing an order at the time force was used.  An inmate's refusal to comply

with orders creates a threat to the safety of staff.  Brockington v. Stanco, No. 5:14-cv-38, 2016

WL 4443204, at *5 (M.D. Ga. May 25, 2016) (citing Danley, 540 F.3d at 1308, and McClendon

v. Smith, No. 7:12-CV-154, 2014 WL 575538, at *6 (M.D. Ga. 2014)).

Plaintiff's noncompliance posed a threat to the safety of staff and inmates in several

ways.  First, the Defendants'—several prison guards—attention was diverted away from

maintaining security throughout the facility to forcing Plaintiff to comply with orders.  Second, a

single prisoner's refusal to follow orders threatens to undermine officers' authority throughout a

facility.  Id. at *6.  Finally, a prisoner's non-violent protestations can, potentially, escalate to

physical resistance and officers are not required to wait for this escalation before using physical

force.  Id. at *6; Bennet, 898 F.2d at 1533 (explaining a prison guard "need not wait until

disturbances reach dangerous proportions before responding").

Therefore, the undisputed material facts show Plaintiff's actions constituted a threat of

safety of the staff and inmates, and this factor cuts in favor of Defendants.

### 5.      *Any efforts taken to temper the severity of a forceful response.*

Defendants took several steps to avoid using force.  Defendants verbally ordered Plaintiff to comply with their orders multiple times.  However, Plaintiff refused to comply with the orders and physically resisted Defendants' efforts to move him.  After Plaintiff's continued resistance, Defendant Foreman warned Plaintiff his failure to comply with orders would result in further action being taken, including being tasered.  Defendants attempted to address Plaintiff's refusal to comply with orders first with verbal orders, then by physically removing him from the cell, warning Plaintiff continued refusal would result in use of force, and only then tasering Plaintiff. The fact Defendants promptly ensured Plaintiff received medical care tempers the severity of the force used.  Cockrell, 510 F.3d at 1312.  Accordingly, this factor cuts in favor of Defendants.

In sum, even when viewing the undisputed material fact in the light most favorable to Plaintiff, Defendants are plainly entitled to summary judgment.  Every factor used to evaluate whether force was applied maliciously or sadistically, cuts in favor of Defendants and against Plaintiff.  Because Plaintiff cannot satisfy the subjective component of an Eighth Amendment excessive force claim, summary judgment should be granted to Defendants Barrick, Foreman, and Thomas.  See Riggins, 568 F. App'x at 853; Wilborn, 2017 WL 9477636, at *9–10; Scott, 2013 WL 4482498, at *6–7.  Accordingly, Defendants Barrick, Foreman, and Thomas are entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim.

### C.      **Defendant Harris Is Entitled to Summary Judgment**

The extent of Defendant Harris' involvement is that she was present when Plaintiff was tasered and eventually handcuffed.  Essential to any failure to intervene claim is the assumption that excessive force was applied.  See Velazquez v. City of Hialeah, 484 F.3d 1340, 1342 (11th Cir. 2007); Reid v. Neal, 688 F. App'x 613, 617 (11th Cir. 2017); King v. Reap, 269 F. App'x

857, 860 (11th Cir. 2008). Because the evidence supports the conclusion no excessive force violation occurred, the failure to intervene claim also fails. See e.g., McBride v. Rivers, 170 F. App'x 648, 657 (11th Cir. 2006) (holding defendant could not be liable for failure to intervene when the underlying excessive force claim fails). Thus, no genuine issue of material fact exists as to the failure to intervene claim, and Defendant Harris is entitled to summary judgment.

### D. Defendant Thompson Is Entitled to Summary Judgment

Defendant Thompson was not present when Plaintiff was tasered and handcuffed. Plaintiff argues Defendant Thompson is not entitled to summary judgment because he ordered Plaintiff to be removed from his current cell and placed in general population, despite his fear for his safety and in violation of jail policy. Doc. 58 at 14. Plaintiff appears to assert a deliberate indifference claim to inmate safety against Defendant Thompson based on the risk posed to Plaintiff if he was returned to general population. Defendants are entitled to summary judgment on this claim as well. Accepting as true that Defendant Thompson ordered Plaintiff to be moved, there is no evidence Defendant Thompson was aware of Plaintiff's concerns over being placed in general population. Owens v. Sec'y of Fla. Dep't of Corr., 812 F. App'x 861, 867 (11th Cir. 2020) (explaining "liability is only appropriate if the 'official knows of and disregards an excessive risk to inmate health or safety'") (internal citations omitted). Even if Defendant Thompson had been aware, Plaintiff did not suffer any injury due to any purported deliberate difference  Instead, Plaintiff's only injury was due to the force used because of his non-compliance and the resulting injury was minimal

To the extent Plaintiff's claims can be interpreted as a claim related to Defendants Barrick, Foreman, and Thomas use of force, such a claim also fails. There is no evidence Defendant Thompson ordered Defendants Barrick, Foreman, and Thomas to use any force in

accomplishing the directive to move Plaintiff. And further, excessive force was not used. Even

if Defendants used excessive force, a finding not made, Defendant Thompson would still be

entitled to summary judgment because Defendant Thompson cannot be held responsible under a

theory of respondeat superior. "It is well established in this circuit that supervisory officials are

not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of

respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.

1999) (citations omitted). To hold a supervisory official or an employer liable, Plaintiff must

demonstrate either (1) the supervisor actually participated in the alleged constitutional violation,

or (2) there is a causal connection between the actions of the supervisor and the alleged

constitutional violation. Id. (internal quotation marks and citation omitted) (citing Brown v.

Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, the undisputed material facts

show Defendant Thompson did not participate in the events forming the basis of Plaintiff's

excessive force claims.

　　　　Similarly, Plaintiff fails to allege a "causal connection" between Defendant Thompson

and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th

Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged

constitutional violation). The "causal connection" can be established "when a history of

widespread abuse puts the responsible supervisor [or employer] on notice of the need to correct

the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's

[or employer's] improper custom or policy . . . result[s] in deliberate indifference to

constitutional rights." Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491,

1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an

inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew

that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by* Randall, 610 F.3d at 701.

Plaintiff provides largely conclusory allegations a causal connection exists. Plaintiff points to Defendant Barrick's interrogatory response as evidence Defendant Thompson should have known his officers would use excessive force when trying to remove Plaintiff from his cell after he requested protective custody. Defendant Barrick responded "yes" to a question about whether he or other prison officials at Bulloch County Jail would taser an inmate for refusing to leave isolation *or* requesting protective custody. As explained above, tasering an inmate who refuses to comply with orders does not violate the Eighth Amendment. Thus, Defendant Barrick's interrogatory response does not provide evidence Defendant Thompson knew these officers would violate Plaintiff's constitutional rights.

In sum, I **RECOMMEND** the Court **GRANT** summary judgment to Defendants Barrick, Foreman, Thomas, Harris, and Thompson on Plaintiff's Eighth Amendment excessive force claim.

## III.   Alternatively, Defendants Are Entitled to Qualified Immunity

Defendants also argue the Court should grant their Motion for Summary Judgment because, even if Defendants' conduct violated Plaintiff's constitutional rights, his claim is barred by qualified immunity. Doc. 49-2 at 17–18. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Al-Amin v. Smith, 511 F.3d 1317, 1324 (11th Cir. 2008) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)); Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002); see also

Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017); Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982).  "[Q]ualified immunity shields from liability 'all but the plainly incompetent or one who

is knowingly violating the federal law.'"  Fransen, 857 F.3d at 851 (quoting Lee, 284 F.3d at

1194).

To successfully assert a defense of qualified immunity, Defendants "must first prove that

[they were] acting within [their] discretionary authority during the events in question."  Cottone,

326 F.3d at 1357, abrogated in part on other grounds by Randall, 610 F.3d at 701.  If Defendants

do so, the burden shifts to Plaintiff to show Defendants are not entitled to qualified immunity.

Id. at 1358.  Plaintiff must show: (1) "relevant facts . . . set forth a violation of a constitutional

right," and (2) Defendants "violated a constitutional right that was clearly established at the time

of [their] conduct."  Taylor v. Hughes, 920 F.3d 729, 732 (11th Cir. 2019).

Defendants argue, even if the Court finds a violation of Plaintiff's constitutional rights,

they are entitled to summary judgment because he cannot show the right was clearly established.

Doc. 49-2 at 17–18.  Even when there is a genuine factual dispute regarding whether a

constitutional violation occurred, if the defendant did not act in violation of clearly established

law, then the claim will not proceed past summary judgment.  Ansley v. Heinrich, 925 F.2d

1339, 1348 (11th Cir. 1991) (citing Harlow, 457 U.S. at 818 ("[I]f the law is not clearly

established, the official is entitled to summary judgment regardless of factual disputes.")).

"[T]he touchstone of qualified immunity is notice."  Bussey-Morice v. Gomez, 587 F.

App'x 621, 627 (11th Cir. 2014) (citing Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir.

2003)).  The violation of a constitutional right is clearly established if a reasonable official would

understand that his conduct violates that right.  Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir.

2011).  Under the Eleventh Circuit's framework for applying this step of the qualified immunity

analysis, a plaintiff must show the allegedly violated right was "clearly established" in one of three ways.  First, the plaintiff may point to caselaw with indistinguishable facts decided by the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state that clearly establishes the constitutional right.  Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007).  Second, a broad statement of principle from "a federal constitutional or statutory provision or earlier case law" can provide notice that certain conduct amounts to a constitutional violation where the principle "applie[s] with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the Defendant['s] conduct."  Id.  Finally, the plaintiff may show that the alleged conduct of the officials was "so egregious that a constitutional right was clearly violated, even in the total absence of case law."  Lewis v. City of West Palm Beach, 561 F.3d 1288, 1292 (11th Cir. 2009).

The specific conduct at issue here is Defendant Barrick's tasering of Plaintiff because Plaintiff refused to comply with orders, as well as Defendants Thompson and Foreman forcing Plaintiff to the ground and handcuffing him, due to Plaintiff's continued noncompliance. Plaintiff has not cited to any controlling or materially indistinguishable case law and does not identify "a broad legal principle" indicating the Defendants use of force amounts to a constitutional violation.

Plaintiff cites to Fields v. Georgia, No. 5:18-cv-135, 2019 WL 5061259, at *3 (S.D. Ga. Sept. 10, 2019), which involved a deliberate indifference to safety claim where an inmate fell while exiting a transport van.  Here, Plaintiff brought an excessive force claim based on Defendants' use of a taser and takedown.  Thus, Fields is not applicable to the facts before the Court, and, therefore, Plaintiff fails meet his burden showing Defendants violated clearly established law.

On the other hand, Defendants point to case law that provides there is no clearly established right to be free from being shot with a taser while refusing to comply with orders. Doc. 49-2 at 18 (citing Ajibade v. Wilcher, 4:16-CV-82, 2019 WL 1412113, at *12 (S.D. Ga. Mar. 28, 2019); Alday, 2014 WL 1320093, at *5; and Callwood v. Jones, 737 F. App'x 552, 560 (11th Cir. 2018)).

Finally, Plaintiff has not shown Defendants conduct was "so egregious as to violate . . . the [Eighth] Amendment on its face."  Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002). Thus, Plaintiff is unable to show Defendants' actions violated clearly established law. Accordingly, even if Plaintiff demonstrated facts amounting to a constitutional violation, Defendants are insulated from liability for violations of federal law.

Thus, alternatively, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment as to the Eighth Amendment claims against Defendants based on qualified immunity.

## IV.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or

argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Because Defendants are entitled to summary judgment, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal

conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 12th day of November, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA